IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONYA DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.   04 C 8218 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| COOK COUNTY and ) | |
| CYNTHIA PRZISLICKI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tonya Davis filed a three-count amended complaint against defendants County of Cook and Cynthia Przislicki, arising out of her employment as a nurse in the emergency room ("ER") of John Stroger Hospital ("Stroger"), a Cook County hospital. Count I alleges that defendants discriminated against plaintiff on the basis of her perceived disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Count II alleges that defendants are liable under 42 U.S.C. § 1983 for violating plaintiff's First Amendment rights. Count III states a defamation cause of action under Illinois law. Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56, and to strike portions of plaintiff's L.R. 56.1 statement. Plaintiff failed to respond to the motion to strike, which was filed on December 5, 2005. For the reasons stated below, the court grants defendants' motion for summary judgment as to Counts I and II and declines to exercise supplemental jurisdiction over Count III. The court grants in part and denies in part as moot defendants' motion to strike.

### FACTS[1]

---

[1]Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements
(continued...)

Defendant Cook County is an employer within the meaning of the ADA. Defendant Cindy Przislicki ("Przislicki") was the director of nursing at all relevant times. Plaintiff Tonya Davis began working as a registered nurse in the ER of Stroger in June 1998, and continued to hold that position at the time she filed her amended complaint.

On March 23 or 24, 2004, plaintiff and Beverly Clanton ("Clanton"), a nursing coordinator, had a discussion regarding the status of a bed sheet in a patient's room, which a technician changed after Clanton had asked plaintiff to change the bed sheet. According to plaintiff, she did not change the bed sheet because she was in the middle of conducting patient assessments, and did not ask the technician to change it. Plaintiff told Przislicki that she felt harassed by Clanton, and that "patient assessments came first over making a bed." Later that day, plaintiff spoke to Erie Spencer ("Spencer"), an employee assistance counselor, who advised plaintiff to meet with a physician from employee health services. Plaintiff met with a physician from employee health services and was given three days of sick leave to see a doctor. Plaintiff was told to bring a doctor's statement when she returned to work. Plaintiff submitted a doctor's statement and returned to work until April 19, 2004, when she took a scheduled vacation through May 3, 2004.

On April 5, 2004, plaintiff wrote a memorandum that she distributed to Dr. Robert Simon ("Simon"), medical director of the ER, Charlene Jones, president of the Illinois Nursing Association, Veronica Batha West, director of nursing at Stroger, and Przislicki. The April 5 memo, titled "Harassment," stated that plaintiff had been verbally abused, harassed,

---

[1](...continued)
and attached exhibits, are not in dispute.

2

disrespected, and threatened by management and doctors in the ER. Plaintiff also stated that her complaints to supervisors had been ignored, and that the ER " is now filled with a certain degree of fear of speaking out from the nursing staff." The April 5 memorandum refers to letters plaintiff collected from other nurses regarding incidents they believed to be physician mistreatment and sent to her union president.

Przislicki met with Dr. Simon after reviewing the April 5, 2004, memo, and decided to request a fitness for duty exam for plaintiff. Przislicki wrote a letter dated April 14, 2004, to Patricia Kelleher, director of employee health services at Stroger. Przislicki stated that she was concerned about plaintiff's fitness for duty because since October 2003 there had been "a noticeable change" in her behavior. Przislicki described several incidents in which plaintiff had become upset at the behavior of other employees in the ER because she believed that they were threatening, insulting, and verbally abusing her. Przislicki also described plaintiff's April 5, 2004, memo as demonstrating "a continually [sic] perception of being harassed," and "feelings of paranoia, anger, and flight of ideas."

On May 3, 2004, plaintiff's first day back from vacation, plaintiff was directed by a co-worker to report to Przislicki's office. Przislicki directed plaintiff to go to employee health services for a fitness for duty examination. Plaintiff met with Dr. Kelleher, who asked plaintiff to sign a release to permit employee health services to obtain information from plaintiff's private physician. Plaintiff refused to sign the release, and the exam was not conducted. Plaintiff was told by human resources and employee health services that she had three options: (1) go to her own doctor; (2) make arrangements to go to the employee assistance program; or (3) submit to the fitness for duty exam.

3

Plaintiff subsequently filed a union grievance, and Przislicki responded in writing. A series of meetings were held in May and early June 2004 regarding plaintiff's union grievance. Plaintiff was allowed to return to work on Mary 22, 2004, after one of the meetings. At the conclusion of the third meeting, plaintiff received an apology and was told that she would receive her back pay for May 3 through May 22, 2004. Plaintiff admits that she received back pay for the three-week period. Plaintiff testified that she may not have received certain pay differentials that nurses receive based on the shift being worked or duties performed, but admitted that she never made any inquiries about it.

Plaintiff filed a timely charge of employment discrimination based on disability with the Equal Employment Opportunity Commission on May 17, 2004. Plaintiff received a notice of right to sue and timely filed the instant lawsuit.

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere

4

existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**A.     ADA (Count I)**

Count I of plaintiff's amended complaint alleges that she was discriminated against on the basis of her perceived disability when she was not allowed to work from May 3, 2004, through May 22, 2004.

When, as in the instant case, there is no direct evidence of discrimination, a plaintiff must rely on the burden shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To set forth a prima facie case of discrimination under the ADA, a plaintiff must establish that: (1) she is disabled within the meaning of the ADA; (2) she was meeting her employer's legitimate employment expectations; and (3) she suffered an adverse employment action. Jackson v. City of Chicago, 414 F.3d 806, 810 (7th Cir. 2004).[2] Defendant argues that plaintiff has failed to establish the first and third elements of a prima facie case, but focuses its challenge on the lack of an adverse employment action[3]. The Seventh Circuit has held that the

---

[2]The court notes that defendant relies on an iteration of the elements of an ADA claim that was employed by this court in Pellack v. Thorek Hospital, 9 F. Supp. 2d 984, 989 (N.D. 1998), which includes that a plaintiff must establish that a non-disabled person replaced her because of the perceived disability. Unlike the instant case, the plaintiff in Pellack alleged that she had been constructively discharged. The Seventh Circuit's more general test, as expressed in Jackson, does not include this fourth element and is more appropriate the instant case.

[3]The ADA defines disability as: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Plaintiff argues that defendants regarded her as substantially limited in the major life activity of working due to her perceived "work related stress," or that she had a record of such impairment. Defendants
(continued...)

5

employment action taken must be adverse and material.  Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002); see also Oest v. Illinois Department of Corrections, 240 F.3d 605, 612 (7th Cir. 2001) ("Adverse actions must be materially adverse to be actionable, meaning more than a 'mere inconvenience' or an alteration of job responsibilities.").

Plaintiff maintains that she suffered a materially adverse employment action in two respects: (1) she did not receive the shift differential pay for the three weeks in May 2004 that she alleges she was not allowed to work; and (2) Przislicki "undermined" plaintiff's authority by requesting the fitness for duty examination, and due to defendants' actions, plaintiff's subordinates "have sought to circumvent or escape her supervision."  Plaintiff fails to cite any authority to support her assertion that either action constitutes an adverse employment action, and does not respond to the case law cited by defendants in support of their motion for summary judgment.

Regarding the differential pay claim, defendant admits that shift differential pay "for working more than 12 hours was omitted" but does not state that plaintiff is owed any differential pay.  Plaintiff testified at her deposition that her paycheck did not "break it down" and that she never made any inquiries regarding the shift deferential.  Plaintiff does not quantify how much she is allegedly owed for the three-week period.  Even assuming that plaintiff was owed some amount of differential pay, she has failed to produce any authority that the failure to pay her this amount can be considered an adverse employment action, particularly given that she

---

³(...continued)
permitted plaintiff to return to work after only three weeks, and plaintiff fails to cite authority to support her argument that such a short suspension demonstrates that she was regarded as substantially impaired as defined under the ADA.  The court need not reach this issue, however, because plaintiff has failed to show an adverse employment action.

did not inquire about it at the time and that it is likely a negligible amount. See Traylor, 295 F.3d at 788 (an adverse employment action is "more disruptive than a mere inconvenience," and might be indicated by termination, a demotion, a material loss of benefits, or significantly diminished material responsibilities). Accordingly, plaintiff has failed to create a triable issue of material fact that the alleged denial of differential pay constitutes an adverse employment action.

Plaintiff also argues that "the lessening of [plaintiff's] job authority and influence is a direct result of Przislicki's request that [plaintiff] be mentally evaluated in May 2004," but plaintiff has failed to proffer any admissible evidence in support of this claim. Again, plaintiff fails to cite any authority in support of her argument that a loss of stature among co-workers constitutes an adverse employment action, or to respond to the substantial case law cited by defendants in support of their argument that it does not. Moreover, the only evidence cited by plaintiff in support of her loss of authority claim is the affidavit testimony of David Doggett ("Doggett"), a former ER technician and plaintiff's co-worker at Stroger. Doggett's affidavit testimony describes disparaging statements made by other nurses about plaintiff, including that they did not have to consult plaintiff about changing lunch schedules because Prizislicki "thinks [plaintiff] is crazy." Doggett also testified that he overheard another nurse, Birdie Ivy ("Ivy"), tell Przislicki that she would not work under plaintiff's supervision, complain about plaintiff, and state "that is why [Przislicki] thinks she's crazy." Defendants have moved to strike these statements of fact because they are based on inadmissible hearsay. Plaintiff failed to respond to the motion to strike.

It is well-established that hearsay statements are inadmissible, and thus cannot create a genuine issue of material fact. See Winskunas v. Birnbaum, 23 F.3d 1264, 1268 (7th Cir. 1994) (hearsay incapable of creating a material of issue); see also Chiesielski v. Hooters of America, Inca., 2004 WL 1699020, at *2 (N.D.Ill. July 20, 2004) (striking statements of fact based in inadmissible hearsay); Buttron v. Sheahan, 2003 WL 21801222, at *4 (N.D.Ill. Aug. 4, 2003) (same). As the Seventh Circuit explained in Winskunas, the evidence offered in support or opposition to a summary judgment motion need not be in admissible form - affidavits are ordinarily not admissible evidence at trial - but it must be admissible in content. 23 F.3d at 1267-68. In the instant case, the hearsay statements in Doggett's affidavit do not fit under any exception to the general bar on hearsay because they are offered to prove that other nurses made the statements about Przislicki's comments. Thus, Doggett's affidavit cannot be admitted in any form. The court grants defendants' motion to strike plaintiff's statements of additional facts based on hearsay contained Doggett's affidavit, including paragraphs Nos. 97, 98, and the hearsay statements contained in Nos. 99 through 101, and 103.[4] Plaintiff fails to identify any other evidence in support of her claim that she suffered an adverse employment action due to a lessening of authority or influence.[5]

Accordingly, the court grants defendants' motion for summary judgment as to Count I.

---

[4] Because the court did not consider any of the other statements of additional facts challenged by defendants, the remainder of defendants' motion to strike is denied as moot.

[5] The court notes that although plaintiff does not raise this issue, the last sentence of paragraph No. 100 of plaintiff's statement of additional facts states, "Doggett witnessed Ivy switching with other nurses to avoid being in [plaintiffs'] work area." Although this statement is admissible because it is based on personal knowledge rather than hearsay, it does not create a triable issue of material fact that defendants undermined plaintiff's authority at work.

8

**B.     First Amendment (Count II)**

Count II of plaintiff's amended complaint asserts a § 1983 claim, alleging that she "was deprived of her federal rights under the First Amendment by defendants because she spoke out on matter of public concern." Plaintiff alleges that on March 24, 2004, she "complained of poor working conditions for registered nurses in the ER." Plaintiff's complaint does not identify what action she alleges defendants allegedly took in response to her complaints in March 2004, although she states that she was granted sick leave shortly thereafter. In her brief in opposition to summary judgment, plaintiff does not include the March 2004 complaints as a basis for her First Amendment claim. Instead, plaintiff asserts that defendants retaliated against her by requesting a fitness for duty exam after she "spoke out against physician misconduct and physical mistreat in the ER" in the April 5, 2004, memorandum. Defendants, in turn, fail to respond to plaintiff's arguments regarding the April 5, 2004, memo, and discuss her March 2004 complaints only.

A plaintiff cannot amend her complaint in her opposition to summary judgment. Grayson v. O'Neill, 308 F. 3d 808, 817 (7th Cir. 2002) (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir.1996)); Insolia v. Philip Morris Inc., 216 F. 3d 596, 606 (7th Cir. 2000). Plaintiff's amended complaint clearly identifies her March 2004 complaints as the basis of her First Amendment claim, and makes no mention of the April 5, 2004, memorandum, which is not attached to plaintiff's complaint. The question then is whether plaintiff has established the required elements of a First Amendment claim based on the March 2004 complaints.

To prevail on a § 1983 First Amendment retaliation claim, a plaintiff must establish that: (1) her conduct was constitutional protected; and (2) her actions were a substantial or motivating

factor for the alleged acts of retaliation taken by the defendants. Kelly v. Mun. Courts of Marion County, 97 F.3d 902, 911 (7th Cir. 1996). In the instant case, defendants argue that plaintiff has failed to create a triable issue of material fact that her speech was constitutionally protected.

A public employee's speech is protected by the First Amendment only if: (1) it touches upon a matter of public concern; and (2) the employee's interest in expressing himself on this matter outweighs any injury the speech could cause to the employer's interest in promoting effective and efficient public service. Connick v. Myers, 461 U.S. 138, 141 (1983); Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). Whether an employee's speech addresses a matter of public concern is determined by the content, form and context of a given statement. Connick, 461 U.S. at 146-47. Content is the most important of these factors, Smith v. Fruin, 28 F.3d 646, 651 (7th Cir. 1994), but the underlying circumstances as well as the speaker's motivation and choice of forum are also important considerations. Barkoo v. Melby, 901 F.2d 613, 618 (7th Cir. 1990); Smith, 28 F.3d at 651.

Defendants argue that plaintiff's complaints in March 2004 do not meet the Connick-Pickering test for protected speech by a public employee because plaintiff raised personal concerns only and did not seek to inform the public of any government wrongdoing. The Seventh Circuit has held that "the public concern element is lacking as a matter of law if speech 'concerns a subject of public interest but the expression addresses only the personal effect upon the employee....'" Cliff v. Board of Sch. Comm'rs, 42 F.3d 403, 409 (7th Cir. 1994); see also Singleton v. Chicago Board of School Reform Board of Trustees of City of Chicago, 2002 WL 2017082, at *9 (N.D. Ill. Sep. 3, 2002) (granting motion for summary judgment where plaintiff

10

failed to present evidence that her sexual harassment complaints were shared by other employees, or that plaintiff was acting on their behalf as a matter of public concern).

Plaintiff's amended complaint does not identify any specific complaints made in March 2004. Plaintiff's brief does not point to any other complaints from that time period. In her L.R. 56.1 statement, plaintiff provides scant information about her March 2004 complaints, other than that she "complained to Przislicki that she felt harassed by her supervisor" after the bed sheet incident with Clanton. This is utterly insufficient to demonstrate that her complaint was entitled to constitutional protection. Even assuming that a single incident of harassment or criticism by a nursing supervisor is a matter of public concern, which is dubious at best, plaintiff fails to point to any evidence that she other nurses were similarly harassed or that she was voicing anything more than a private employment dispute to Przislicki in March 2004.

Because plaintiff has failed to satisfy the first step of the <u>Connick-Pickering</u> test, the court grants defendants' motion for summary judgment on Count II.

**C.     Defamation (Count III)**

Count III of plaintiff's amended complaint appears to allege a state-law claim of defamation, although plaintiff failed to invoke a federal court's supplemental jurisdiction under 28 U.S.C. § 1367. Because the court grants summary judgment for defendants on Counts I and II, it declines to exercise supplemental jurisdiction over Count III.

## CONCLUSION

For the reasons stated above, the court grants defendants' Cook County and Cynthia Przislicki's motion for summary judgment as to Counts I and II of plaintiff's amended complaint, and declines to exercise supplemental jurisdiction of Count III. Defendant's motion to strike portions of plaintiff Tonya Davis's L.R. 56.1 statement is granted in part, and denied in part as moot.

**ENTER: January 23, 2006**

_____
**Robert W. Gettleman
United States District Judge**